**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-17-08260-001-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Joel Zamorano Partida, | |
| Defendant. | |

Defendant Joel Zamorano Partida is an inmate with the Federal Bureau of Prisons ("BOP"). Due to ongoing health concerns from the COVID-19 pandemic, Defendant has filed a motion for modification of his sentence and release to home confinement or supervised release pursuant to 18 U.S.C. § 3582(c) ("motion for compassionate release"). Docs. 98, 99. The government has filed a response. Doc. 100. For reasons stated below, the Court will deny the motion.

**I.   Background.**

On February 14, 2019, Defendant received a two-year prison sentence after pleading guilty to making false statements during the purchase of firearms in violation of 18 U.S.C. § 924(a)(1)(A). Doc. 93. Defendant began serving his sentence on March 22, 2019. *Id.* His projected release date is December 2, 2020.[1]

---

[1] *See* Federal BOP, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited June 5, 2020).

On April 4, 2020, while housed at the correctional institution in Taft, California ("CI-Taft"), Defendant made a written request to the warden for home confinement and a BOP motion on his behalf for a modification of his sentence under 18 U.S.C. § 3582(c). Doc. 98 at 22-23.[2]  Two days later, Dale Patrick, the grievance coordinator at CI-Taft, posted a blanket memorandum to all inmates stating that due to the number of requests for home confinement received, "individual responses will not be provided, nor will any future requests regarding this same matter be addressed." *Id.* at 30.  The memorandum further stated that "due to the current decision by the [BOP] to close the facility and the subsequent transfer of all inmates, each of you will have to make this request at your new facility." *Id.*

CI-Taft removed the memorandum the same day it was posted after receiving guidance from the BOP.  Doc. 100-1 at 3-4, ¶ 5.  Per that guidance, CI-Taft began considering inmates for home confinement.  *Id.*  The record in this case does not reflect whether a decision has been made on Defendant's eligibility for home confinement.

Defendant filed the present motion on April 13, 2020, while still housed at CI-Taft. Doc. 98 at 1.  The facility closed shortly thereafter, and Defendant was transferred to the federal correctional institution in Mendota, California ("FCI-Mendota").  Doc. 100 at 3 & n.1.[3]

**II.   Compassionate Release Under 18 U.S.C. § 3582(c) and the First Step Act.**

Compassionate release is governed by 18 U.S.C. § 3582(c). *See United States v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *4 (C.D. Cal. May 21, 2020) (citing *United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019)).  Section 3582(c) previously provided for compassionate release only upon motion of the BOP Director. *See id.*; *United States v. McCollough*, No. CR-15-00336-001-PHX-DLR, 2020 WL 2812841, at *1 (D. Ariz. May 29, 2020).  But on December 21, 2018, Congress enacted – and the President signed into law – the First Step Act of 2018 ("FSA"), "with the

---

[2] CI-Taft is a contracted institution operated by a private corporation. *See* Federal BOP, https://www.bop.gov/locations/ci/taf/ (last visited June 5, 2020).

[3] *See* Federal BOP, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited June 5, 2020).

2

intent of 'increasing the use and transparency of compassionate release.'" *Willis*, 382 F. Supp. 3d at 1187 (quoting Pub. L. No. 115-391, 132 Stat. 5194, at 5239 (2018)).

The FSA amended § 3582(c) to permit motions for compassionate by defendants. A defendant may bring such a motion after: (1) requesting the BOP to make such a motion on his behalf, and (2) exhausting all administrative appeals after the BOP has denied the request, or 30 days have elapsed after the warden received the request, whichever is earlier. *See* § 3582(c)(1)(A); *United States v. Millage*, No. 3:13-CR-234-SI, 2020 WL 2857165, at *1 (D. Or. June 2, 2020); *United States v. Baye*, No. 3:12-CR-00115-RCJ, 2020 WL 2857500, at *8 (D. Nev. June 2, 2020) ("The [FSA] materially altered § 3582(c)(1)(A) as previously only the [BOP] Director could bring a motion for compassionate release.") (comparing § 3582(c)(1)(A) (2018) with § 3582(c)(1)(A) (2002)).

Specifically, amended § 3582(c) provides:

> The court may not modify a term of imprisonment once it has been imposed except that –
>
> (1) in any case –
>
> (A) the court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).[4]

---

[4] "Although relief under the statute is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." *United States v. Marks*, No. 03-cr-06033-L, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020); *see also United States v. Young*, No. 2:00-cr-0002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[A] majority of the district courts that have considered the issue have likewise held, based on the First Step Act, that they have the authority to reduce a prisoner's sentence upon the court's independent finding of

**III.   Defendant's Motion.**

Defendant seeks immediate release to his home, either under supervised release through the probation office or home confinement as permitted under § 3582(c)(1)(A)(i). Doc. 98 at 1. Defendant argues that his motion should be granted due to the "extraordinary and compelling reasons" confronting the federal prison system by the COVID-19 pandemic and the fact that he is not a danger to the community, as evidenced by his BOP minimum security designation. *Id.* at 2. Defendant asserts that given his age, gender, and medical conditions, he is "extremely concerned that when (and not if) the COVID-19 virus spreads through the institution that [he is] incarcerated at the time of this filing, [CI-Taft], or the prison camp at which [he is] currently designated and facing imminent transfer, . . . it will be a death sentence[.]" *Id.* at 2-3.

The government contends that Defendant's motion should be denied on procedural grounds because he has not filed an administrative request for compassionate release, in compliance with the Code of Federal Regulations, with the warden of either CI-Taft or FCI-Mendota. Doc. 100 at 3-4, 8-9. The government asserts that Defendant must file a request for compassionate release with the warden of FCI-Mendota, his current facility, and the Court can consider a subsequent motion only if Defendant exhausts his administrative appeals or the warden fails to respond within 30 days. *Id.* at 8. The government further contends that the present motion should be denied because Defendant has failed to show extraordinary and compelling reasons justifying his immediate release and a reduction in sentence. *Id.* at 14-17.

The Court concludes that Defendant's April 4 request to the warden at CI-Taft was a valid request for compassionate release and Defendant exhausted his administrative remedies before filing the present motion. And while the Court is sympathetic to Defendant's concerns regarding the spread of COVID-19 within BOP facilities, the motion will be denied because he has not shown the requisite extraordinary and compelling reasons for compassionate release or a reduction in sentence under § 3582(c)(1)(A)(i).

extraordinary or compelling reasons.") (citations omitted).

**A.     Defendant's April 4 Request.**

Under 28 C.F.R. § 571.61, an inmate's request for a BOP motion under § 3582(c)(1)(A) shall be submitted to the warden and must contain "the following information: '(1) the extraordinary or compelling circumstances that the inmate believes warrant consideration'; and '(2) proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.'" *United States v. Matecki*, No. 2:15-CR-00177-TLN, 2020 WL 2512406, at *2 (E.D. Cal. May 15, 2020) (quoting § 571.61(a)).

Defendant's April 4 request explicitly cited § 3582(c)(1)(A) and the Attorney General's March 26 and April 3, 2020 memoranda prioritizing the increased use of home confinement in response to the COVID-19 pandemic.  Doc. 98 at 22; *see id.* at 24-28. Due to these purported "extraordinary and compelling reasons" unforeseen at the time of sentencing, Defendant sought "immediate transfer to home confinement . . . and a motion by the BOP to be brought on [his] behalf for a modification of [his] imposed term of imprisonment" under § 3582(c)(1)(A), the Attorney General's April 3 memorandum, and the applicable sentencing guidelines, U.S.S.G. § 1B1.13.  Doc. 98 at 22.  Defendant asserted that he meets the factors set forth in the Attorney General's memoranda because: "(1) my age and vulnerability/underlying medical conditions to COVID-19; (2) I am classified as MINIMUM Security and Out/Community Custody; (3) I have exhibited exemplary conduct in prison with no violent or gang related activity and no BOP violations; (4) I have a verifiable re-entry plan that prevents recidivism and maximizes the protection of the public, my family, and myself from contracting COVID-19 at my release residence verses any BOP facility, including Taft; (5) I am eligible to receive Time Credits per PATTERN which confirms I am a non-violent offender and non-violent conviction history; and (6) my recidivism risk per PATTERN is Minimum." *Id.* at 23.  Defendant further explained that he is 60 years old with hypertension and cholesterol, and that he would be released to his sister's residence in Chula Vista, California.  *Id.*  Defendant attached a

5

release plan to his request explaining that his sister will provide financial support for as long as needed and he has a job lined up at NASCO shipyard in San Diego. *Id.* at 21.

The government submits a declaration from Patrick in which he asserts that CI-Taft did not construe any of the 150 requests for home confinement it received from inmates as requests for compassionate release under § 3582(c)(1)(A). Doc. 100-1 at 3-4, ¶¶ 3 & 8. Specifically, Patrick states that "[t]he process for submitting a request for Compassionate Release are delineated in 28 C.F.R § 571.61 and none of the requests for immediate placement on home confinement that I received complied with these procedures." *Id.* at 4, ¶ 8. But Patrick's April 6 memorandum said nothing about inmates' alleged failure to comply with § 571.61. Instead, it referenced an "influx" of requests and explained that "current procedures will remain in place" because CI-Taft "has not been provided guidance by the [BOP] regarding the Attorney General's Memorandums involving any revised procedures for an inmate's placement on Home Confinement." *Id.* at 7. Patrick's memorandum also directed inmates to file a new request for home confinement after being transferred from CI-Taft. *Id.*

Given the rapidly evolving and unprecedented nature of the COVID-19 pandemic, the Court shares the concern expressed by the district court in *Matecki* that CI-Taft "did not construe *any* of the 150 requests for home confinement – many of which were presumably filed by unrepresented inmates with limited access to legal help – as motions for compassionate release." 2020 WL 2512406, at *2 (emphasis in original); *see also United States v. Reid*, No. 17-CR-00175-CRB-1, 2020 WL 1904598, at *2 (N.D. Cal. Apr. 18, 2020) (the government "relies on Dale Patrick, who asserts that TCI did not interpret Reid's request (or, shockingly, any of the 150 requests it received from inmates) as a request for compassionate release") (emphasis in original). And "given the content of [Defendant's] request, the Court rejects Patrick's assertion out of hand. [Defendant's] request specifically cited 18 U.S.C. § 3582. To not construe it as a request for compassionate release requires willful blindness." *Reid*, 2020 WL 1904598, at *2; *see also Matecki*, 2020 WL 2512406, at *2 (finding that the defendant's request "was sufficient to

6

be construed as one for compassionate release in these unprecedented circumstances" even though it did not specifically mention § 3582).

The government claims that even if Defendant's April 4 request was a valid request for compassionate release, Patrick's April 6 memorandum was not a denial of the request. Doc. 100 at 3, 9. "Of course it was. Telling [Defendant] that the prison would not consider his request – that 'individual responses will not be provided, nor will any future requests regarding this same matter be addressed,' [*see* Doc. 100-1 at 7] – is a denial of [Defendant's] request, whether or not it is called that. It tells [Defendant] that he has reached the end of the road for his request at [CI-Taft]." *Reid*, 2020 WL 1904598, at *3.

**B.     Defendant Has Met the Exhaustion Requirement.**

A primary "purpose of the compassionate release provisions of the FSA is to allow defendants with extraordinary and compelling reasons to receive an expeditious resolution of a request for early release." *McCollough*, 2020 WL 2812841, at *1. Despite this important purpose, a prisoner must exhaust his administrative remedies with the BOP before bringing a motion for compassionate release. *See United States v. Johnson*, No. 2:15-CR-00003-KJM, 2020 WL 2307306, at *3 (E.D. Cal. May 8, 2020). Exhaustion requires the prisoner to seek compassionate release with the BOP and exhaust all appeals or show that at least 30 days have lapsed since the receipt of such a request by the warden, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Weidenhamer*, No. CR-16-01072-001-PHX-ROS, 2020 WL 1929200, at *2 (D. Ariz. Apr. 21, 2020) ("[T]he statutory language allows a prisoner to proceed to court only after 'fully exhausting all administrative rights' or upon 'the lapse of 30 days' after submitting a request to her warden.").

The government contends that Defendant has failed to exhaust his administrative remedies. Doc. 100 at 8-9. But this contention is inconsistent with the position the government has taken in similar cases. On April 22, 2013 – the day before filing its response in this case – the government informed the district court in *United States v. Esparza*, No. 17cr1101-JAH, 2020 WL 2838732 (S.D. Cal. June 1, 2020), that CI-Taft had

decided not to act on requests for release and the defendant therefore has "effectively exhausted his administrative remedies." 2020 WL 2838732, at *2; *see also United States v. Robledo*, No. 18cr2190-AJB, 2020 WL 2542641, at *4 & n.2 (S.D. Cal. May 19, 2020) ("[B]ased on FCI Taft's issuance of a blanket memorandum regarding home confinement requests, the United States does not contend that defendant failed to exhaust his administrative remedies[.]").

Regardless, 30 days have passed since the warden at CI-Taft received Defendant's April 4 request for compassionate release. Defendant therefore has met the exhaustion requirement. *See* § 3582(c)(1)(A); *Matecki*, 2020 WL 2512406, at *2; *United States v. Murray*, No. 6:14-CR-06183 EAW, 2020 WL 2842027, at *2 (W.D.N.Y. June 2, 2020) ("The Government does not oppose Defendant's application on exhaustion grounds, as he has filed a request with the Warden at USP Canaan for release and more than 30 days have elapsed since the Warden's receipt of that request (which was denied)."); *United States v. Anderson*, No. 17-CR-00595-YGR-1, 2020 WL 2838797, at *1 (N.D. Cal. June 1, 2020) ("The warden received the request on April 30, 2020. Because the 30-day period for bringing a section 3582(c) motion lapsed on May 30, 2020, the Court has jurisdiction to act on defendant's motion."); *United States v. Morehouse*, No. 4:18-CR-40019-02-KES, 2020 WL 2836188, at *2 (D.S.D. June 1, 2020) ("The warden received Morehouse's request on April 7, 2020. The 30-day period expired on May 7, 2020, which is 30 days from the date the warden received Morehouse's request. Thus, Morehouse's motion is ripe for review on the merits."); *United States v. Shkreli*, No. 15-CR-637(KAM), 2020 WL 2513521, at *1 (E.D.N.Y. May 16, 2020) ("[U]pon a finding of 'extraordinary and compelling circumstances,' this court has authority to reduce defendant's sentence, as over 30 days have passed since Mr. Shkreli filed his March 30, 2020 petition with the BOP.").[5]

/ / /

/ / /

---

[5] The government asserts that Defendant must submit a new request to the warden of FCI-Mendota before the Court can consider his motion, but cites no legal authority in support of this assertion. Doc. 100 at 8.

### C. Defendant Has not Shown Extraordinary and Compelling Reasons.

To be eligible for compassionate release, a prisoner must show that "extraordinary and compelling reasons" warrant such a reduction in sentence and that the reduction is "consistent [with] applicable policy statements" issued by the United States Sentencing Commission. § 3582(c)(1)(A)(i). While § 3582(c) does not define "extraordinary and compelling reasons," the Sentencing Commission has identified four categories that may qualify: serious medical conditions, advanced age, family circumstances, and a catch-all "other reasons." U.S.S.G. § 1B1.13, application note 1(A)-(D); *see Esparza*, 2020 WL 2838732, at *2; *United States v. Hays*, No. CR 18-00088-KD-N, 2020 WL 1698778, at *2 (S.D. Ala. Apr. 7, 2020).[6]

#### 1. Serious Medical Conditions.

The following medical conditions may constitute extraordinary and compelling reasons justifying compassionate release:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)[.]
>
> (ii) The defendant is—
>
> > (I) suffering from a serious physical or medical condition,
> >
> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

§ 1B1.13, application note 1(A).

---

[6] There is no policy statement specifically applicable to motions for compassionate release filed by prisoners under the FSA. By its terms, the current policy statement applies to motions for compassionate release filed by the BOP Director. U.S.S.G. § 1B1.13. The Sentencing Commission has not amended the current policy statement since the FSA was enacted, nor has it adopted a new policy statement applicable to motions filed by prisoners. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) (citing *United States v. Gross*, No. 2:04-CR-32-RMP, 2019 WL 2437463, at *2 (E.D. Wash. June 11, 2019)). While the current policy statement may not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A)(i), it does provide helpful guidance. *See id.*

9

Defendant does not claim to be terminally ill or to be suffering from a serious health condition. He asserts that he has cholesterol and hypertension, but provides no evidence as to the seriousness of these conditions. Doc. 98 at 23.

### 2.     Advanced Age.

Compassionate release may be warranted where the defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." § 1B1.13, application note 1(B). Because Defendant is 60 years old, he does not fall within the parameters of this category. Nor does he indicate that his physical or mental health is seriously deteriorating because of the aging process. And he has served only 14 months of his 24-month sentence, which is not 75% of the term of imprisonment.

### 3.     Family Circumstances.

The Court may consider a defendant's family circumstances regarding the care of minor children or an incapacitated spouse or partner. § 1B1.13, application note 1(C). Defendant does not indicate that he has minor children or an incapacitated spouse or partner.

### 4.     Other Reasons.

Compassionate release may be appropriate where "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13, application note 1(D). In its present version, subdivision (D) leaves identification of "other" extraordinary and compelling reasons to the BOP Director. *See id.*; *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at * 3 (D. Me. July 11, 2019). But now that the FSA allows inmates to file for compassionate release without the BOP's support, it is unclear what other reasons can be the basis for compassionate release. The Court finds that until the Sentencing Commission amends its current policy statement, those other extraordinary and compelling

reasons should be similar to what the Commission has already articulated as criteria for compassionate release. *See Fox*, 2019 WL 3046086, at *3; *Hays*, 2020 WL 1698778, at *3.

Defendant asserts that compassionate release is warranted due to the high risk of fatality from COVID-19 infections in elderly persons, particularly males, and the conditions within BOP facilities which foster the spread of the virus. Doc. 98 at 3-4, 9-14; Doc. 99 at 1-2. Defendant's concerns about exposure to COVID-19 in light of his age, gender, and the conditions of his confinement, are not taken lightly by the Court. But as of the date of this order, there have been no inmates or staff diagnosed with COVID-19 in Defendant's former facility, CI-Taft, or his current facility, FCI-Mendota. *See* Federal BOP, COVID-19, Coronavirus, https://www.bop.gov/coronavirus/index.jsp (last visited June 5, 2020). Defendant's general concern about possibly contracting the virus are not similar to what the Commission has articulated as criteria for compassionate release. *See Hays*, 2020 WL 1698778, at *3. This Court "joins other [c]ourts in the Ninth Circuit and across the country in finding that requests for compassionate release [based on] the presence of COVID-19 alone does not create extraordinary and compelling reasons for release." *Esparza*, 2020 WL 2838732, at *2 (citing cases); *see also United States v. Atari*, No. 2:17-CR-00232-JAM, 2020 WL 2615030, at *2 (E.D. Cal. May 22, 2020) ("Courts have found general concerns about possible exposure to COVID-19 'do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement.'") (citations omitted); *United States v. Gold*, No. 15 CR 330, 2020 WL 2197839, at *2 (N.D. Ill. May 6, 2020) (explaining that "even courts that have expressly taken a 'liberal view' of the Sentencing Commission's policy statements have denied motions brought by inmates housed in facilities with no evidence of widespread transmission") (citations omitted); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, . . . [b]ut the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate

11

release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

The Court accordingly will deny Defendant's motion. *See Hays*, 2020 WL 1698778, at *2-3 (finding the defendant's concerns about contracting COVID-19 based on her age (60 years old), medical condition (anemia), and allegedly unsanitary conditions at her BOP facility were not extraordinary and compelling reasons justifying her release); *Shkreli*, 2020 WL 2513521, at *3 (denying motion for compassionate release in part because the defendant was "confined in a facility where there are currently no cases of COVID-19").[7]

**IT IS ORDERED** that Defendant's motion for compassionate release (Doc. 98) is **denied**.[8]

Dated this 5th day of June, 2020.

*David G. Campbell*

David G. Campbell
Senior United States District Judge

---

[7] Defendant contends that the Eighth Amendment's prohibition against cruel and unusual punishment supports his motion. Docs. 98 at 2, 99 at 2-6. But Eighth Amendment protections and standards are not applicable to compassionate release analysis under § 3582(c). *See United States v. Statom*, No. 08-20669, 2020 WL 2611156, at *3 (E.D. Mich. May 21, 2020); *United States v. Rodriguez-Collazo*, No. 14-CR-00378-JMY, 2020 WL 2126756, at *3 (E.D. Pa. May 4, 2020) ("Defendant contends that the current conditions at Elkton FCI violate his Fifth and Eighth Amendment rights. However, these claims – which the Court construes as challenging the execution of his sentence at Elkton FCI – are not properly brought in a motion for compassionate release[.]"); *United States v. Numann*, No. 3:16-CR-00025-TMB, 2020 WL 1977117, at *4 (D. Alaska Apr. 24, 2020) (explaining that "claims relating to the manner and conditions of confinement . . . are not properly brought in a motion for compassionate release").

[8] Given this ruling based on Defendant's failure to establish the requisite extraordinary and compelling reasons, the Court need not decide whether the factors set forth in 18 U.S.C. § 3553(a) support compassionate release or a reduction in sentence. *See* Doc. 98 at 3-4, 14-18.